**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

RONELLE HARPER LYNCH,                    )
                                         )
                    Plaintiff,           )
                                         )        Civil Action No. 08-351
        v.                               )
                                         )
COMMISSIONER OF SOCIAL,                   )
SECURITY                                 )
                                         )
                    Defendant.           )

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., District Judge.

        Plaintiff, Ronelle Harper Lynch, commenced the instant action pursuant to 42 U.S.C. §

405(g), seeking judicial review of the final decision of the Commissioner of Social Security,

who found that she was not entitled to disability insurance benefits ("DIB") under Title II of the

Social Security Act, 42 U.S.C. §§ 401-433.  Plaintiff filed an application for DIB on May 22,

2006, alleging that he was disabled since May 1, 2003 due to injuries in her neck, back, arms and

legs resulting from four motor vehicle accidents, arthritis, and depression. (Administrative

Record, hereinafter "AR", at 8, 69, 81, 100, 110). For the purposes of DIB, Plaintiff's date last

insured was March 31, 2008. (AR 101). Her application was denied and Plaintiff requested a

hearing before an administrative law judge ("ALJ") (AR 62-66). A hearing was held on March

19, 2008 and following this hearing, the ALJ found that Plaintiff was not disabled at any time

through the date of his decision and therefore was not entitled to DIB benefits (AR 8-15; 16-47).

Plaintiff's request for the review by the Appeals Council was denied (AR 1-4), rendering the

Commissioner's decision final under 42 U.S.C. § 405(g).  The instant action challenges the

ALJ's decision.  Presently pending before the Court are cross-motions for summary judgment. For the reasons set forth below, I will deny Plaintiff's motion and grant Defendant's motion.

## I. Background

Plaintiff was born on October 18, 1961 and was forty-six years old on the date of the ALJ's decision (AR 100). She had received a high school education (AR 22). Her past relevant work experience was as an assistant manager at Dollar General, a fast food cashier/clerk, and a supermarket delicatessen clerk. (AR 41-42, 82, 117).

In 1998, 1999, 2000 and 2004, Plaintiff sustained injuries in motor vehicle accidents. (AR 235). Plaintiff suffered a broken ankle in the 1998 crash that required the insertion of pins and the use of an external fixator device. (138-166). The pins were later removed. (R. 148, 152). In October 1999,  near complete healing of right ankle fractures was noted. (AR 138).

Plaintiff was examined by her primary physician, Dr. John Zinnamosca, in December 2003 for complaints of mild pain in her back that radiated to her thigh. (AR 273). Dr. Zinnamosca noted that plaintiff was having difficulty walking and was using a cane. He diagnosed her with muscle strain at L5 and radiculopathy. She was prescribed Percocet and Naprosyn. *Id*. She was seen again in February 2004 for a follow-up at which time she reported her pain was "coming and going" with radiation into her thigh and some tingling in her leg. (AR 272). Some tenderness in the lumbosacral muscles was noted and a straight leg test was positive at forty-five degrees. *Id*.

Plaintiff returned to Dr. Zinnamosca in November 2004 with complaints of back and knee pain and again in December 2004. (AR 270-271). In December 2004, Plaintiff reported

shoulder, neck, and low back pain. (AR 270). Dr. Zinnamosca noted tenderness over the entire thoracic and lumbar spine and paraspinal muscles. Range of motion in the neck was noted as twenty degrees and lumbar flexion was at eighty degrees. Reflexes were normal. Dr. Zinnamosca assessed cervical and lumbar strain and prescribed the application of heat, Vicodin, Skelaxin, and Motrin. *Id*. An x-ray series of her cervical spine indicating minimal anterior bony endplate spurring at the C5-6 level. (AR 168). An MRI of the brain was normal. (AR 169).

Dr. Zinnamosca examined Plaintiff again in January 2005. Plaintiff reported that she was having good days and bad days with pain and pressure in her lower back and some residual pain in her left scapula area. (AR 268). Plaintiff was continued on her medications. *Id*. In April 2005, Plaintiff presented with complaints of personal problems that were upsetting her. (AR 268). Dr. Zinnamosca diagnosed depression and anxiety and prescribed Zoloft and Ativan. (AR 267). In May 2005, Plaintiff reported that the Zoloft was helping. *Id*. In June 2005, she was seen for knee pain after twisting it. Dr. Zinnamosca diagnosed her with a collateral ligament strain and gave her Motrin. (AR 266). When examined in August 2005, Plaintiff complained of bruising easily, knee pain, and a swollen ankle. (AR 265-266). She was prescribed Vicodin and Flexeril. *Id*. She was seen again in November 2005 for complaints of back pain radiating down her legs. (AR 265). He diagnosed lumbosacral sprain and prescribed Skelaxin and Motrin. (AR 264).

Plaintiff underwent two chiropractic treatments with Dr. Brett Keyser in November 2005 and December 2005. Plaintiff complained of lower lumbar pain, sacro-iliac pain, and pain in the mid-back, all at a level eight out of ten. Dr. Keyser noted a severe level of pain and discomfort

on palpitation and decreased range of motion (AR. 171). A small improvement was noted at the second appointment. *Id*.

Plaintiff was examined again by Dr. Zinnamosca in February 2006 for a follow-up on her back pain, which was noted as also being in her legs. (AR 264). Dr. Zinnamosca noted that Plaintiff was tender along the lumbosacral spine. Straight leg raises were positive at eighty degrees. (AR 263-264). In May 2006, Plaintiff reported back, joint, and leg pain. She was prescribed Soma, Celebrex and Vicodin. (AR 263-264).

Dr. David Williams took over as Plaintiff's primary care physician in June 2006. (AR 175). An MRI was ordered. (AR 262). The MRI of the cervical spine indicated straightening of the normal lordotic curve with uncovertebral spurring at 3-4 with minimal disc bulging and mild bilateral foraminal narrowing at that level; disc bulge at 4-5 with foraminal narrowing primarily on the right but also to some degree on the left; and similar degenerative changes to 4-5 at 5-6. Her most recent lumbosacral spine MRI demonstrated mild multi-level spondylosis with mild multiple disc dessication; mild disc space narrowing at the L3 and L4-5 areas; and mild neural foraminal narrowing at L5-S1. (AR 235-237, 250).

On June 16, 2006, Plaintiff completed a daily activities survey indicating that to do laundry she was using a "grabber" to pick up clothes, cooked fast instant meals, would use a light-weight vacuum and squeeze mop for the floors, and would rely heavily on her husband and daughter to do things for her. (AR 104). She further indicated that her husband would help her with her personal needs and did the driving because she was afraid to drive. She reported that she could sit and pay her bills but needed to get up and move around; could mow part of the lawn

with a self-propelled mower; could carry light bags to the trash; could unload two to three light

bags of groceries from the car; and could go shopping while using the cart as a walker. (AR 104-

106). She noted she could climb six steps without resting; had to walk with a cane at times;

could sit for about twenty minutes; lift about five pounds; and would ride in the sidecar of a

motorcycle that had a step to get in and out. (AR 107-108). With respect to her personal

relationships, she noted that she did not get along well with family, did not respond well to

criticism, and got along "ok" with authority figures. (AR 110). She noted difficulty

concentrating, difficulty understanding directions (was putting together a shelving unit and did

not understand the directions), and difficulty accepting change. (AR 111).

On July 3, 2006, Dr. Williams completed a functional capacity assessment. (AR 166-

184). Dr Williams reported diagnoses of chronic low back pain and neck and shoulder pain

intermittently controlled by medications. (AR 176). Plaintiff's sensation and motor power was

noted as normal. (AR 176-177). Dr. Williams indicated Plaintiff's use of an assistive device,

noting the necessity of its use for ambulation in some situations but not for weight bearing. (AR

177). He further noted that Plaintiff did not suffer from an emotional condition and had not been

referred to a mental health professional. (AR 178). He opined that Plaintiff was unable to do

activities for a sustained period of time and had a fair prognosis based on her June MRI. (AR

179). Dr. Williams noted that Plaintiff could occasionally bend, kneel, crouch and balance; never

stoop or climb; had no impairment in reaching, handling, fingering, feeling, seeing, hearing,

speaking, tasting/smelling, or with continence; could occasionally lift ten pounds and

occasionally carry two to three pounds; could stand and walk more than two hours but less than

six depending on the length of the sustained activity; could sit for less than six hours; and was limited in pushing and pulling in her upper and lower extremities. (AR 181, 184).

On July 21, 2006, Kimberly Ulery, a state agency medical consultant, completed a functional capacity evaluation indicating that Plaintiff was capable of occasionally lifting and carrying twenty pounds; frequently lifting and carrying ten pounds; standing and walking about two hours in an eight hour work day; sitting about six hours in an eight hour work day; was unlimited in her ability to push and pull; could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; and never climb ropes, ladders, and scaffolds. (AR 186-188). On the same date, Dr. Sanford Golin completed a psychiatric review technique indicating that Plaintiff did not suffer from a mental impairments and as a result, had no attributable functional limitations. (AR 192-204).

On August 4, 2006, Plaintiff was seen by Dr. Williams for complaints of depression symptoms. He noted his diagnosis as major depressive disorder and placed her on Cymbalta. (AR 241).

Dr. Barry Bittman evaluated Plaintiff on September 26, 2006. (AR 235-237). He noted her most recent MRI findings. Upon examination, Plaintiff was noted as having 5/5 motor strength in the upper and lower extremities; normal and symmetric reflexes; a somewhat antalgic gait due to a turned out ankle present since birth; diffuse tenderness in the entire spinal axis and paraspinal regions; positive straight leg tests at fifteen degrees bilaterally; and restriction of range of motion in the neck and lumbosacral spine. Dr. Bittman noted that there was no "clear cut suggestion of spinal cord pathology" and indicated his impression as chronic pain syndrome

6

and ordered nerve conduction and electromyography studies. He further suggested that Plaintiff be referred to a pain clinic. *Id*. An electrophysiological examination was normal. (AR 229-234).

Plaintiff was examined by Dr. Williams for complaints of a boil on her left shoulder, a changed birthmark, depression, and increased pain on October 6, 2006. (AR. 226). Dr. Williams noted that Plaintiff was experiencing severe family stressors and had a tearful mood/affect. He increased her Cymbalta and referred her for a psychological consultation. She was continued on Celebrex, Soma, and Vicodin for pain. *Id*. Her skin lesion was removed in January 2007. (AR 228).

Plaintiff began a two month course of physical therapy on November 8, 2006 and ended on January 18, 2007. (AR 205, 220). At the initial consultation, Plaintiff had active range of motion in her shoulder; sitting rotation had minimal limitation; cervical spine range of motion was limited; resisted test and strength in the upper and lower quadrant was normal; grip was normal; heel to toe walking was good; left hip flexion was ninety degrees but all other motions were within functional limits; and prone knee flexion was within functional limits. (AR. 222). At discharge, Terry Hemlock, the physical therapist noted that Plaintiff's range of movement had improved and goals had been partially met, except for pain relief. (AR 205). Plaintiff reported that she was feeling much better but was still having pain in the range of three out of ten to ten out of ten. She was given a home exercise program. *Id.*

On January 18, 2007, Plaintiff had an initial consultation with Marilyn Gushard at the Pain Management Center. (AR 248-249). Plaintiff was examined by a pain specialist, Dr. Antonio Colantonio, on February 12, 2007. (AR 244-246). Upon examination, Dr. Colantonio

noted that Plaintiff had a limited range of motion; positive straight leg raised test; was unable to walk on her heals and toes; had normal gait; and a positive Patrick's sign bilaterally. He discussed starting Plaintiff with aqua therapy. (AR 245).

In February 2007, Plaintiff returned to Dr. Williams with complaints of pain and depression. (AR 288). Her examination was normal. She was diagnosed with sinusitis and depression. (AR 289). She was given antibiotics and continued on Effexor. *Id*. She was seen again on May 30, 2007, with complaints of low back pain down her legs to her knee cap. Plaintiff reported that she was having trouble keeping her balance, difficulty doing activities of daily living, difficulty driving, and was tearful. (AR 286). Dr. Williams noted that Plaintiff appeared visibly uncomfortable. *Id*. He diagnosed urinary frequency, fibromyalgia, hematuria, and tobacco use disorder. (AR 287).  On June 1, 2007, blood tests revealed that Plaintiff was hypothyroid and had macrocytic anemia, so she was placed on Synthroid. (AR 285).

At a follow-up on June 29, 2007, Plaintiff reported that she was feeling much better since starting her thyroid medicine and was sleeping better with less pain. (AR 283). Plaintiff's examination was normal. Her diagnoses were noted and she was continued on her medications (AR 284). She was not seen again by Dr. Williams until January 15, 2008 for complaints of forgetfulness. (AR 280). Plaintiff complained that her short term memory was affected and that she was in pain and uncomfortable. She also noted that she was having dizzy spells and had passed out on one occasion. *Id*. Dr. Williams noted that the memory loss was possibly caused by the use of Chantix to stop smoking. (AR 281).

On February 12, 2008, Dr. Williams completed a second functional capacity evaluation indicating that Plaintiff could sit for six hours, stand for two hours, and walk for one hour in an eight hour workday; could sit or stand for about one half hour before having to change positions; could walk for less than one hour before having to rest; and could occasionally lift and carry less than ten pounds. (AR 297). He further noted that Plaintiff could not use her hands and arms for reaching or pushing and pulling; could not use her legs for foot or leg control; could never bend, kneel, squat, crawl or stoop; could occasionally reach above shoulder level; could occasionally be exposed to extreme temperatures and noise and vibration; and could never be exposed to dust, fumes, gases and unprotected heights. (AR 298). With respect to pain, Dr. Williams noted that pain was present to such an extent as to be distracting to adequate performance of daily activities or work; walking, standing, and bending greatly increased pain causing abandonment of tasks related to daily activities and work; and medication would severely limit Plaintiff's effectiveness in the workplace due to distraction, inattention, and drowsiness. (AR 298-299). He concluded that Plaintiff was only capable of four hours of work per day. (AR 299).

Plaintiff and Charles M Cohen, a vocational expert, testified at the hearing held by the ALJ on March 19, 2008. (AR 16-47). Plaintiff testified to making two work attempts since her alleged onset date, once for two days as a ride operator at Conneaut Lake Park and once for two and a half months at Arby's. (AR 19, 22-23). She also testified that she occasionally used a cane to ambulate, but was uncertain whether that cane was prescribed by a doctor. (AR 23). Plaintiff indicated that she had a driver's license and would drive "only when [she] absolutely [had] to." (AR 24). Plaintiff testified that she had gone to a psychologist for three months but then quit

going. (AR 25). Plaintiff testified that she was being provided Effexor for depression by her primary care physician. *Id*. Plaintiff testified that she took her Effexor properly and that it helped her. (AR 26).

Plaintiff claimed that she was having constant pain in her lower back that would radiate down her legs to the back of her knee-caps on occasion. (AR 26-27). Plaintiff indicated that her pain was exacerbated by standing and walking and that she could only stand for about 15-20 minutes. (AR 28). She also indicated that she could only sit for about a half an hour. (AR 29). Plaintiff testified that she experienced further pain inbetween her shoulder blades and in her neck. (AR 29-30). Plaintiff reported that the pain in her upper back was exacerbated by bending down to pick things up and in her neck by turning it. (AR 30). Plaintiff testified that she had difficulty, at times, using her arms. (AR 31). Plaintiff indicated that her back was more of a problem than the ankle that she had shattered years earlier in a car crash. (AR 31-32). Plaintiff also indicated that she had problems with fatigue and sleep. (AR 32).

Plaintiff testified that she used a grabber to separate clothes, but that her husband did most "everything when he [came] home from work." (AR 33). She also testified that she could fill the dishwasher at times, dust on occasion, and very rarely do sweeping, mopping, or vacuuming. *Id*. She indicated that she went to church twice a week and experienced discomfort sitting while there. (AR 34). She also indicated that about once a month she had a day where she could not get out of bed for two or three days at a time. (AR 35). Plaintiff reported that her medications made her drowsy. (AR 36).

The ALJ asked the vocational expert to assume an individual of the same age, education, and work experience as Plaintiff, who was limited to light work that would not require the operation of foot controls, repeated bending at the waist at ninety degrees, and fast and sudden neck rotation to the extremes of range of motion. (AR 42). The ALJ also explained that the hypothetical individual would be able to move her neck to the extremes of range of motion, just not in a fast and sudden manner and would not be able to engage in crawling, climbing, or balancing. (AR 43). The vocational expert testified that Plaintiff could work as a light cashier cook. *Id*. The vocational expert further testified that Plaintiff could work as a cashier, a packer, or an assembler if the hypothetical was reduced to the sedentary level with the same additional limitations. (AR 43). The jobs could be done with a sit/stand option but would exist in fewer numbers. *Id.* The vocational expert indicated that none of the jobs required significant pushing or pulling against resistance. (AR. 43-44). The vocational expert also testified that an employer would not tolerate more than three absences per month or was off task ten to fifteen percent of the workday. (AR 44).

Following the hearing, the ALJ issued a written decision which found that Plaintiff was not entitled to a period of disability, DIB within the meaning of the Social Security Act. (AR 14-23). Her request for an appeal to the Appeals Council was denied rendering the ALJ's decision the final decision of the Commissioner (AR 8-15). She subsequently filed this action.

## II. Standard of Review

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or

considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 564-65, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see Richardson v. Parales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson*, 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).

## III. Discussion

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S.137, 140-41, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen,* 482 U.S. at 141.  If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past.  *Id.* If the claimant satisfies this burden, the [Commissioner] can demonstrate (5) that there are jobs in the

> national economy that the claimant can perform. *Ferguson v.*
> *Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

*Jesurum,* 48 F.3d at 117.

In the instant case, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, and fibromyalgia (20 CFR 404.1520 (c)). (AR 10). He determined at step three that Plaintiff's impairments did not meet or equal the criteria of any of the listed impairments. (AR 11). The ALJ found that Plaintiff was able to perform work at the sedentary exertional level, but could not operate foot controls, do repeated bending at the waist to ninety degrees, perform fast or sudden head and neck rotation to the extremes of range of motion, crawl, climb, kneel, balance, or push and pull against resistance. He also found that Plaintiff must be allowed the option to sit or stand at her discretion. (AR 11). At the final step, the ALJ concluded that Plaintiff could perform jobs that existed in significant numbers in the national economy. (AR 14). The ALJ additionally determined that her statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the noted residual functional capacity. (AR 12). Again, I must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Plaintiff first challenges the weight assigned to the opinions of Plaintiff's treating physician. Plaintiff suggests that the ALJ did not properly address the opinion of Dr. Williams that Plaintiff was restricted in her ability to perform basic work activities such as lifting and carrying, standing and walking, reaching, pushing and pulling and operating foot or leg controls.

She argues that the sole contradictory medical evidence was the report of the non-examining state agency medical consultant, which was not entitled to controlling weight.

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 422, 429 (3d. Cir. 1999), quoting, *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, for controlling weight to be given to the opinion of a treating physician that opinion must be "well supported by medically acceptable clinical and laboratory diagnostic techniques and [ ] not inconsistent with other substantial evidence." 20 C.F.R. §§404.1527 (d)(2), 416.972 (d)(2). There are several factors that the ALJ may consider when determining what weight to give the opinion of the treating physician. 20 C.F.R. §404.1527, 416.927 (d)(2). They include the examining relationship, treating relationship, supportability, consistency, specialization, and other factors. 20 C.F.R. §404.1527 (d), 416.927 (d).

A review of the ALJ's opinion, however, reveals that he did not rely on the report of Kimberly Ulery in failing to fully credit Dr. Williams' conclusions. Instead, he discussed Plaintiff's diagnostic testing, medical records, and daily activities. (AR 11-13). The records indicate that Plaintiff suffered a severely broken ankle that had healed by October of 1999. (AR 138). She reported mild pain in her back and thighs in December 2003 and was diagnosed with muscle strain and radiculopathy. (AR 273). In February 2004, the pain was "coming and going." (AR 272). Plaintiff was not seen again until November and December 2004 when she

14

complained of back, knee, neck, and shoulder pain. (AR 270-271). X-rays revealed only minimal anterior bony endplate spurring and an MRI of the brain was normal. (AR 169).

By January 2005, Plaintiff was reporting good days and bad days with only some residual knee pain. (AR 268). She indicated that she was having personal problems in April 2005 and was treated with medication for depression and anxiety. (AR 268). At the next appointment in May, she reported that the medication was helping. (AR 267). From June 2005 to November 2005, Plaintiff was treated with pain killers and muscle relaxants for complaints of knee, back, and leg pain. (AR 264-266). She attended only two chiropractic treatments in November and December 2005. (AR 171). A small improvement was noted at the second appointment. *Id*.

Plaintiff continued to be treated with medication at her February 2006 and May 2006 appointments. (AR 263-264). Straight leg raise was positive at eighty degrees in February, but an MRI of the cervical spine in June 2006 showed only "minimal disc bulging and mild bilateral foraminal narrowing at the 3-4 level and a disc bulge at 4-5 and 5-6. (AR 235-237, 250, 264-264). An MRI of the lumbar spine demonstrated only *mild* multi-level spondylosis with *mild* multiple disc dessication; *mild* disc space narrowing at the L3 and L4-5 areas; and *mild* neural foraminal narrowing at L5-S1. *Id*.

A few weeks after taking over Plaintiff's care in June 2006, Dr. Williams completed a functional capacity evaluation in which he indicated that she did not suffer from an emotional condition. (AR 178). In August, she was seen for complaints of depression symptoms and was diagnosed with major depressive disorder and placed on Cymbalta. (AR 241). Plaintiff was later referred for a psychological consultation in October 2006, but the record does not indicate that

she ever underwent one. (AR 226). At the hearing, Plaintiff testified that the Effexor was helping her. (AR 26).

In September 2006, Dr. Bittman indicated that Plaintiff had 5/5 motor strength in all of her extremities and normal reflexes. He concluded that there was "no clear cut suggestion of spinal cord pathology" and referred Plaintiff to a pain clinic. (AR 235-237). The records indicate that Plaintiff had consultations with the pain clinic, but did not undergo any treatment there. (AR 24-248). The electrophysiological examination was normal. (AR 229-234).

At the initial consultations for physical therapy, Plaintiff's range of motion was noted as mostly normal and active. (AR 205, 220). At discharge, her goals had been partially met except for pain relief. (AR 205). Plaintiff was continued on medication for pain from February to May 2007. (AR 286-288). In May 2007, Dr. Williams noted a diagnosis of fibromyalgia but indicated no findings in support of this diagnosis except Plaintiff's complaints of pain. (AR 287).[1] In June 2007, blood tests revealed that Plaintiff was hypothyroid and was placed on medication. (AR 283). By June 29, 2007, Plaintiff reported that she was feeling much better after starting the medication and was sleeping better with less pain. (AR 283). Plaintiff was not seen again until January 2008 and discussed issues with short term memory loss, which Dr. Williams attributed as a possible side effect of taking Chantix to quit smoking. (AR 280-281).

---

[1]In order to diagnose fibromyalgia, a series of focal points must be tested for tenderness and other conditions must be ruled out through objective medical and clinical trials. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 244 (6th Cir. 2007)(citing *Preston v. Secretary of Health and Human Services,* 854 F.2d 815, 820 (6th Cir. 1988).

Based on the foregoing discussion, I conclude that substantial evidence supports the ALJ's conclusion that the Plaintiff did not suffer from limitations as severe as those noted by Dr. Williams in his February 2008 report.

I also note that the ALJ did accept many of Dr. Williams limitations when formulating Plaintiff's residual functional capacity. The ALJ placed Plaintiff at the sedentary work level as supported by Dr. Williams finding that she could sit for six hours, stand for two, and walk for one. The ALJ also provided for a sit/stand option, taking into account Dr. Williams' opinion that Plaintiff needed to the ability change positions. The ALJ found that Plaintiff could not operate foot controls, do repeated bending at the waist to ninety degrees, perform fast or sudden head and neck rotation to the extremes of range of motion, crawl, climb, kneel, balance, or push and pull against resistance. Dr. Williams' similarly opined that Plaintiff could not use her hands and arms for pushing and pulling; could not use her legs for foot or leg controls; and could not kneel, crawl, stoop or kneel. The other limitations such as only being able to reach above shoulder level occasionally, only being able to lift less than ten pounds on occasion[2], significant pain related distraction, and certain environmental limitations were not supported by the medical evidence and the ALJ properly rejected them.

Plaintiff also argues that her subjective complaints of disabling pain were not given proper weight. Plaintiff asserts that the ALJ erred in concluding that his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible.

---

[2] Sedentary work requires the lifting of no more than ten pounds with occasional lifting and carrying of articles like docket files, ledgers, and small tools. *See* 20 C.F.R. 404.1527.

Specifically, Plaintiff argues that the ALJ failed to accord proper weight to the Plaintiff's diagnoses and the objective medical evidence and misrepresented her reported daily activities

The ALJ must give serious consideration to the claimant's subjective complaints, even when those assertions are not confirmed fully by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir.1986). Subjective complaints need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir. 1971). Where a claimant's testimony is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's complaints without contrary medical evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985); *see Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan*, 997 F.Supp. 648, 658 (W.D.Pa. 1998).

At the hearing, Plaintiff testified that she was having constant pain in her lower back that would radiate down her legs to the backs of her knee-caps on occasion. (AR 26-27). Plaintiff indicated that her pain was exacerbated by standing and walking and that she also experienced pain in her shoulders and neck. (AR 29-30). She testified that the pain was also exacerbated by bending down to pick things up and in her neck by turning it. (AR 30). She also indicated the use of a cane, on occasion, to ambulate. (AR 23). As to her activities of daily living, she indicated that she used a grabber to separate clothes, could fill the dishwasher at times, dust on occasion, and very rarely do sweeping, mopping, and vacuuming. (AR 33). She further indicated that she would go to church twice a week. (AR 34).

Plaintiff reported similar activities in her daily activities questionnaire but on a more frequent basis and also reported that she could mow part of the lawn with a self-propelled mower; could carry light bags to the trash; could unload two to three light bags of groceries from the car; and could go shopping while using the cart as a walker. (AR 104-106). She further indicated that she would ride in the sidecar of a motorcycle that had a step to get in and out. (AR 107-108).

The ALJ noted these daily activities in his opinion stating that Plaintiff "is able to maintain her household, care for pets, do the laundry, cook, vacuum, drive i[f] necessary, assist with law mowing, and carry light bags." (AR 13). This is not a misrepresentation of Plaintiff's daily activities as reported in her daily activities questionnaire and later in her testimony. In addition, as noted above, Plaintiff's medical records do not support the severity of pain attested to by Plaintiff. MRIs indicated only mild or minimal spinal problems and Dr. Bittman reported no "clear cut suggestion of spinal cord pathology." (AR 235-237). Plaintiff was referred to a pain specialist but did not undergo any treatment. (AR 235-237, 245-249). In fact, Plaintiff reported feeling much better after starting hypothyroid medication in June 2007. (AR 283). She did not receive treatment again until January 2008 for unrelated complaints. Additionally, although Plaintiff testified that her medications make her tired or fatigued, but there is no evidence in her medical records that she made continued complaints of this nature. These records and others were noted and discussed by the ALJ. As a result, it is evident that his assessment of Plaintiff's credibility was supported by substantial evidence.

Finally, in conjunction with her first argument, Plaintiff argues that the Commissioner failed to shoulder his burden of proving Lynch's ability to perform other work in the national economy. Plaintiff argues that the ALJ's hypothetical question to the vocational expert was inadequate because it did not include all of Dr. Williams' stated limitations in reaching, lifting and carrying, and distraction from pain. As noted above, however, substantial evidence supported the ALJ's rejection of the significant limitations imposed by Dr. Williams. As such, I find no error in the hypothetical posed to the vocational expert. Specific limitations with respect to Plaintiff's ability to lift and reach were not supported. 5/5 motor strength was noted in Plaintiff's upper extremities and no limitations were noted in the medical record with respect to Plaintiff's ability to reach and carry or lift. (AR 235-237). As Plaintiff was placed at the sedentary level by the ALJ, there is not expectation of her having to lift more than ten pounds. As a result, Plaintiff's argument is unconvincing.

## IV. Conclusion

In conclusion, the ALJ's opinion is supported by substantial evidence and therefore, Plaintiff's motion is denied. An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

RONELLE HARPER LYNCH,      )
                                   )
             Plaintiff,        )
                                   )     Civil Action No. 08-351
                   v.           )
                                   )
COMMISSIONER OF SOCIAL,     )
SECURITY                       )
                                   )
             Defendant.     )

## <u>ORDER</u>

AND NOW, this __26th _ day of February, 2010, and for the reasons set forth in the accompanying Memorandum opinion, IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment (Doc. No. 6) is DENIED, and the Defendant's Motion for Summary Judgment (Doc. No. 10) is GRANTED. Judgement is hereby entered in favor of Defendant, Michael J. Astrue, Commissioner of Social Security, and against Plaintiff, Ronelle Harper Lynch.

The clerk is directed to mark the case closed.

By the Court,

_____
Sean J. McLaughlin
United States District Judge

cc: Counsel of Record

21